NOT FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-12-0000734
29-FEB-2016
10:53 AM

NO. CAAP-12-0000734

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI


DON MARIE CHUNG, Claimant-Appellant, v.
MEDASSETS INSOURCE, INC., Employer-Appellee,
and
HAWAII EMPLOYERS' MUTUAL INSURANCE COMPANY,
INC., Insurance Carrier-Appellee


APPEAL FROM THE LABOR AND INDUSTRIAL RELATIONS APPEALS BOARD
(CASE NO. AB 2011-114 (2-09-03703))


MEMORANDUM OPINION
(By: Nakamura, C.J., and Foley and Reifurth, JJ.)

In this workers' compensation case, Claimant-Appellant Don Marie Chung ("Chung") appeals from the July 17, 2012 Decision and Order filed by the Labor and Industrial Relations Appeals Board ("Board"). The Director of the Department of Labor and Industrial Relations ("Director") originally adjudicated Chung's claims against Employer-Appellee Medassets Insource Inc. ("Employer") and Insurance Carrier-Appellee Hawaii Employers' Mutual Insurance Company, Inc. ("Carrier") the October 2, 2009 Decision for left wrist, left knee/leg, back and thoracic area injuries after a work-related incident occurring on February 22, 2009 ("February 22, 2009 Work Injury").

In the March 9, 2011 Decision, the Director determined that Employer should pay for medical care related to the February 22, 2009 Work Injury to include the request of Dr. Gary T. Blum for authority to perform a repeat carpal tunnel surgery on Chung's left wrist. Employer appealed from the Director's

March 9, 2011 Decision to the Board

The instant dispute arises out of the Board's July 17, 2012 Decision and Order, in which the Board modified the Director's March 9, 2011 Decision and held that Employer was not liable for Chung's repeat carpal tunnel surgery. On appeal, Chung challenges five of the Board's findings of fact ("FOF") and maintains that the Board's July 17, 2012 Decision and Order erroneously concluded that Employer and Carrier (collectively, "Medassets") were not liable for repeat carpal tunnel surgery to Chung's left wrist because the surgery was not reasonably required by the February 22, 2009 Work Injury.

Because we conclude that Medassets' expert witnesses "did not consider how [claimant's] prior injury might have been affected or aggravated by the . . . accident[,]" *Panoke v. Reef Dev. of Hawaii, Inc.*, 136 Hawai'i 448, 464, 363 P.3d 296, 312 (2015), the evidence was insufficient to rebut the presumption that Chung's left wrist injury and symptoms were related to the February 22, 2009 Work Injury. Therefore, we vacate the July 17, 2012 Decision and Order and remand for further consideration.

I.   BACKGROUND

In January 2009, Chung was employed by Employer "as a caregiver for people with Alzheimer's disease and dementia." On February 22, 2009, Chung sustained work-related injuries to her left wrist, left knee/leg, back, and thoracic area while caring for an Alzheimer patient ("Patient"). It is undisputed on appeal that Chung's February 22, 2009 Work Injury arose out of and in the course of Chung's employment.

A.   Chung's relevant pre-February 22, 2009 medical history

Prior to Chung working for Employer, Chung developed a non-industrial left wrist condition, and underwent carpel tunnel surgery with Dr. Jeffrey Lee on September 30, 2008. Chung experienced significant relief of her symptoms. Wearing a brace and careful not to lift anything more than ten pounds, Chung returned to work approximately one week after the surgery.

2

In addition to Chung's September 30, 2008 carpal tunnel surgery, Chung was also diagnosed with fibromyalgia in 1998, and bipolar affective depression sometime before February 2009. Chung had no desire to take medications for either condition, but occasionally saw a therapist for her depression.

B.    Medassets' response to Chung's claim

Medassets initially denied compensability pending an investigation.  In a letter dated September 16, 2009, Carrier notified the Director that, based on Dr. Lau's independent medical examination dated July 2, 2009, Medassets accepted liability for injuries to the left wrist, left knee/leg, back and thoracic.  On October 2, 2009, the Director determined that Chung sustained an injury to her left wrist, left knee/leg, back, and thoracic area, based upon Employer's voluntary acceptance of the work injuries.

C.    Chung's medical visits and procedural history following
      her February 22, 2009 Work Injury

1.    Medical assessments

Chung consulted with numerous healthcare professionals following her injury.  Most of the consultations were initiated by Chung relating to pain which she attributed to the February 22, 2009 Work Injury.  Some were initiated at Employer's request.  Consistent with the facts in *Panoke*, Chung's pre-existing carpal tunnel injury was asymptomatic and did not prevent her from working before the accident, and the medical evidence does not explain why the work injury could not have aggravated her prior condition.

2.    Procedural history.

On March 16, 2010, Chung saw Dr. Blum, and Dr. Blum noted that Chung stated that she had about one day relief of her symptoms after the cortisone injection.  He determined that Chung would be a good candidate for revision release, with a hypothenar fat flap.  Dr. Blum sent his March 16, 2010 assessment ("March 16, 2010 Note") to Carrier, suggesting that Chung would be a good candidate for surgery.  The March 16, 2010 Note,

3

however, did not make any request for surgery.

On April 8, 2010, Chung submitted an Application for Hearing to the Department of Labor and Industrial Relations. The application did not identify any particular request for treatment. By decisions dated May 11, 2010 and November 5, 2010, the Director awarded Chung medical care, services, and supplies as the nature of the February 22, 2009 Work Injury may require. In its November 5, 2010 decision, the Director also ordered Dr. Blum to submit a treatment plan if further treatment was requested. Neither party appealed the October 2, 2009, May 11, 2010, or November 5, 2010 Decisions.

In its March 9, 2011 Decision, the Director determined that Medassets must pay for such medical care, services and supplies as the nature of the injury may require, including the March 16, 2010 Note from Dr. Blum allegedly asking for authority to perform a repeat carpal tunnel surgery of the left wrist. On March 28, 2011, Employer appealed from the Director's March 9, 2011 Decision to the Board.

At trial before the Board, Chung testified that as of March 30, 2009, she continued to have problems with her left wrist, which was reinjured form the February 22, 2009 Work Injury. Chung was the only person to testify at the trial. At the conclusion of the trial the Board requested that both parties submit their post-trial briefs by June 8, 2012.

In its Decision and Order, dated July 17, 2012, the Board issued its FOF and a single Conclusion of Law ("COL"), which states as follows:

> The Board makes the following Conclusion of Law. If it should be determined that this Conclusion of Law should have been set forth as a Finding of Fact, then it shall be deemed as such.
>
> The Board concludes that Claimant is entitled to and Employer liable for, continued medical care for Claimant's left wrist injury. However, the Board further concludes that Employer is not liable for a repeat carpal tunnel surgery to Claimant's left wrist, because it is not reasonably required by the nature of the February 22, 2009 work injury. Further, despite the determination by the Director approving the March 16, 2010 request by Gary T. Blum, M.D., for a repeat carpal tunnel surgery of the left wrist, the Board concludes that Dr. Blum's March 16, 2010 submission was a treatment note or report and not a valid request for surgery.

This timely appeal followed.

II.  POINTS OF ERROR[1]

On appeal, Chung alleges five points of error.[2]

(1)  The Board erred in the third paragraph of FOF 31:

The Board does not consider this report to meet the requirements for a request for surgery.  Rather, although it is addressed to HEMIC, Employer's workers' compensation insurance carrier, it is a SOAP treatment note that does not meet the requirements of the Hawai'i Workers' Compensation Medical Fee Schedule, and which also does not include the procedure code, medical documentation justifying the need for surgery, the estimated date of surgery, or the hospital where the surgery is to be performed.  It does not even request approval for a proposed surgery.

(2)  The Board erred in FOF 33:

The Board finds that Dr. Blum did not submit a valid request for surgery on March 16, 2010.

(3)  The Board erred in FOF 39:

The Board credits the diagnoses of left wrist strain and/or contusion by Dr. Lim, Dr. Lee, Dr. Lau, and Dr. Endicott.

(4)  The Board erred in FOF 40:

The Board finds that a carpal tunnel surgery to Claimant's left wrist is not reasonably required by the nature of Claimant's February 22, 2009 work injury to her left wrist.  Even claimant's treating physicians, including Dr. Blum and Dr. Sloan, have equivocated on whether Claimant's symptoms emanate from her carpal tunnel. Further, on March 31, 2009, Dr. Kapur noted that [C]laimant's Phalen's and Tinel's tests were negative.

(5)  The Board erred as a matter of law in COL 1 in relevant part:

However, the Board further concludes that Employer is not liable for a repeat carpal tunnel surgery to Claimant's left wrist, because it is not reasonably required by the nature of the February 22, 2009 work injury.  Further, despite the determination by the Director approving the

---

[1]  Chung's points of error on appeal are reorganized for clarity.

[2]  Medassets argues that Chung's Opening Brief fails to comply with Hawaii Rules of Appellate Procedure ("HRAP"), and asks this court to impose penalties consistent with HRAP Rule 30.  We acknowledge Medassests' argument; nevertheless, noncompliance with Rule 28 does not always result in dismissal of the claims, and "[t]his court . . . has consistently adhered to the policy of affording litigants the opportunity 'to have their cases heard on the merits, where possible.'" *Morgan v. Planning Dep't, Cty. Of Kauai*, 104 Hawai'i 173, 180-81, 86 P.3d 982, 989-90 (2004) (quoting *O'Connor v. Diocese of Honolulu*, 77 Hawai'i 383, 386, 885 P.2d 361, 364 (1994)).  Accordingly, and in the absence of identified substantial prejudice, we will address the merits of the issues raised by Chung to the extent that we are able, notwithstanding any violations of HRAP Rule 28.

March 16, 2010 request by Gary T. Blum, M.D., for a repeat carpal tunnel surgery of the left wrist, the Board concludes that Dr. Blum's March 16, 2010 submission was a treatment note or report and not a valid request for surgery.

## III. STANDARD OF REVIEW

### Administrative Agency Appeals - From LIRAB

Ordinarily, deference will be given to decisions of administrative agencies acting within the realm of their expertise. The rule of judicial deference, however, does not apply when the agency's reading of the statute contravenes the legislature's manifest purpose. Consequently, we have not hesitated to reject an incorrect or unreasonable statutory construction advanced by the agency entrusted with the statute's implementation.

*Coon v. City & Cty. of Honolulu*, 98 Hawai'i 233, 245, 47 P.3d 348, 360 (2002) (internal quotation marks, citations, and brackets omitted).

## IV. DISCUSSION

A. The Board did not err when it found that Dr. Blum did not submit a valid request for surgery on March 16, 2010.

In her first and second points of error, Chung contends that the Board erred when it found that Dr. Blum did not submit a valid request for surgery on March 16, 2010. In her reply brief, Chung argues that the "patient, the doctor, the employer, and the [Director]" treated the March 16, 2010 Note as a request for surgery, that the Medical Fee Schedule's notification requirements in Hawaii Administrative Rules ("HAR") § 12-15-51 are merely guidelines that can not be used to deny a grant under HRS § 386-21 for all "medical care, services, and supplies as the nature or the injury requires," and that, therefore, Carrier failed to comply with HAR § 12-15-51(b) by inappropriately denying a valid request for surgery.

The Board did not err when it determined that Dr. Blum did not submit a valid request for surgery.[3/] While Dr. Blum's

_____

[3/] Chung's first and second points of error might also be deemed waived for failure to present any argument in her opening brief, and for presenting such arguments in her reply brief "to which no answer could be made." *Hawaii Ventures, LLC v. Otaka, Inc.* 114 Hawai'i 438, 472-73 n.17, 164 P.3d 696, 730-31 n.17 (2007) (citing *Matter of Hawaiian Flour Mills, Inc.*, 76 Hawai'i 1, 14 n.5, 868 P.2d 419, 432 n.5 (1994) (holding that arguments raised for the first time in the reply brief on appeal were deemed waived)).

March 16, 2010 Note does not meet the provisions of the elective surgery requirements of the Hawai'i Workers' Compensation Medical Fee Schedule ("Medical Fee Schedule"), nor does it prohibit a subsequent properly documented request.[4/] As the Board notes in FOF 31, the March 16, 2010 Note in question "does not include the procedure code, medical documentation justifying the need for surgery, . . . or the hospital where the surgery is to be performed." In addition, the March 16, 2010 Note does not even request approval for surgery. Based on the record on appeal, there is no evidence that the Board erred when it found that Dr. Blum did not submit a valid request for surgery in his March 16, 2010 Note.

While we determine that Dr. Blum's March 16, 2010 Note was not a valid request for surgery, this is not dispositive of Chung's appeal. Chung's issue before the Board, and now before this court, is a broader issue related to Medassets' liability for continued medical care of Chung's left wrist, including repeat carpal tunnel surgery. As such, we consider the remainder of Chung's points of error.

> B. The Board erred in concluding that the injury was not work-related, but was unclear as to why the surgery was not reasonably needed given the nature of the February 22, 2009 Work Injury.

In her third, fourth, and fifth points of error, Chung contends that she is entitled to, and Employer is liable for, a repeat carpal tunnel surgery on her left wrist. Although Chung does not explicitly argue that the Board erred in finding that

---

[4/]    HAR § 12-15-51 states in relevant part:

> (a) When elective surgery is contemplated, the attending physician shall obtain permission from the employer at least seven calendar days prior to the date of the proposed surgery. Written notification shall include procedure code, medical documentation justifying the need for surgery, the estimated date of surgery, and the hospital where the surgery is to be performed.

> (b)  . . . If a request for a surgical procedure has been denied, the attending physician may not resubmit the same request for the same surgical procedure for forty-five calendar days after postmark of the employer's denial.

Employer overcame the presumption of compensability by substantial evidence, we construe Chung's argument regarding aggravation of a pre-existing condition to incorporate that argument, and conclude that the Board erred in finding that Employer rebutted the presumption of compensability by substantial evidence.

HRS § 386-85 states in relevant part that "[i]n any proceeding for the enforcement of a claim for compensation under this chapter it shall be presumed, in the absence of substantial evidence to the contrary[, t]hat the claim is for a covered work injury[.]" Haw. Rev. Stat. § 386-85(1) (1993). In order to overcome the presumption,

> the employer has the initial burden of producing substantial evidence that, if believed, could rebut the presumption that the injury is work-related. If the initial burden of production is satisfied, the [Board] must weigh the employer's evidence against the evidence presented by the claimant. The employer bears the ultimate burden of persuasion, and the claimant is given the benefit of the doubt, on the work-relatedness issue.

*Moi v. Dep't of Pub. Safety*, 118 Hawai'i 239, 242, 188 P.3d 753, 756 (App. 2008) (citing *Nakamura v. State*, 98 Hawai'i 263, 267-268, 47 P.3d 730, 734-735 (2002)). In worker's compensation cases, "[t]he term 'substantial evidence' signifies a high quantum of evidence which, at a minimum, must be 'relevant and credible evidence of a quality and quantity sufficient to justify a conclusion by a reasonable person that an injury or death is not work-connected.'" *Van Ness v. State, Dep't of Educ.*, 131 Hawai'i 545, 558, 319 P.3d 464, 477 (2014) (quoting *Flor v. Holguin*, 94 Hawai'i 70, 79, 9 P.3d 382, 391 (2000)) (brackets omitted) (noting that the slightest aggravation or acceleration of an injury by the employment activity requires compensation). Further, "[i]f the employer fails to adduce substantial evidence to the contrary, the presumption mandates that the claimant must prevail." *Akamine v. Hawaiian Packing & Crating*, 53 Haw. 406, 409, 495 P.2d 1164, 1166 (1972) (citing *Acoustic, Insulation and Drywall, Inc. v. Labor and Indus. Relations App. Bd.*, 51 Haw. 312, 316, 459 P.2d 541, 544 (1969)).

In *Nakamura*, the Hawai'i Supreme Court recognized that "'generalized' medical testimony was insufficient to rebut the

presumption of work-relatedness" and that "a reasonable degree of specificity is required in order for medical opinion evidence to rebut the presumption of compensability." *Nakamura*, 98 Hawaii at 268-69, 47 P.3d at 735-36 (citing *Akamine*, 53 Haw. at 410-412, 495 P.2d at 1167-68). Applying that principle, the Court explained in *Panoke* that employer's physicians opined generally, "because the physicians did not consider how [claimant's] prior injury might have been affected or aggravated by the . . . accident." *Panoke*, 136 Hawai'i at 464, 363 P.3d at 312.

Here, as in *Panoke*, Employer's medical experts opined generally on Chung's alleged left wrist recurrent carpal tunnel syndrome following the February 22, 2009 Work Injury because they did not consider how Chung's prior left wrist carpal tunnel syndrome might have been affected or aggravated by the accident. *Id.* Rather, Employer's medical experts basically opined that Chung's left wrist symptoms were not work-related because they believed that her left wrist work injury should have resolved shortly after the accident. In fact, while both Dr. Clifford Lau and Dr. John Endicott noted that Chung's carpal tunnel syndrome was worsening on her left wrist, that her ongoing symptoms were due to preexisting recurrent carpal tunnel syndrome and cubital tunnel syndrome, and that the recurrent carpal tunnel syndrome was not related to the February 22, 2009 Work Injury, neither doctor explained why Chung's prior injury could not have been aggravated by the February 22, 2009 Work Injury. *Panoke*, 136 Hawai'i at 464, 363 P.3d at 312. Because "generalized medical testimony [is] insufficient to rebut the presumption of work-relatedness," *Nakamura*, 98 Hawai'i at 268, 47 P.3d at 735, the Board in this instance erred in finding that Employer provided substantial evidence to rebut the presumption of compensability.

In finding that carpal tunnel surgery was not "reasonably required by the nature of [Chung's] February 22, 2009 [W]ork [I]njury," the Board noted that Chung's treating physicians "have equivocated on whether [Chung's] symptoms emanate from her carpal tunnel" and that her Phalen's and Tinel's tests were negative. It, therefore, is not clear the extent to which the Board's determination that the proposed carpal tunnel

surgery was not reasonably required was based on its erroneous determination that her existing condition was not work related versus a determination that the surgery was not medically warranted. Since we remand for reconsideration upon presentation of a proper request for surgery, the Board should at that time clarify its view on the reasonableness of the surgical request. Because we have determined that Employer did not rebut the presumption of compensability, we need not address the remainder of Chung's sub-arguments.

Based on the foregoing, the Decision and Order filed by the Labor and Industrial Relations Appeals Board on July 17, 2012, is vacated and the case is remanded to the Board for further proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, February 29, 2016.


On the briefs:

Wayne H. Mukaida,
for Claimant-Appellant.

Brian G.S. Choy and
Keith M. Yonamine
(Choy & Tashima)
for Employer-Appellee and
Insurance Carrier-Appellee

Craig H. Nakamura
Chief Judge

Associate Judge

Lawrence M Reifurth
Associate Judge